Edward Lewis Tobinick v. Steven Novella. Good morning, Your Honors. Colin O'Brien for the Appellants. May it please the Court. This case involved five published attacks by defendants against plaintiffs. The District Court expressly excluded three out of the five attacks in its fee analysis. The District Court was precluded from taxing exceptional case fees without taking into account the totality of these circumstances. This Court definitively held that secondary promotional uses of speech can convert the speech into commercial speech. The three attacks the District Court did not analyze were secondary promotional uses of the first two attacks. So the District Court did not look at the totality of the facts through the lens of the governing law. I missed the point. What's your point on this? If a District Court is going to tax fees, exceptional case fees, for unreasonable litigation or your case was too weak or you should have known, the District Court's obligated to actually look at the evidence that was being argued in corresponding with the governing law. I hear the District Court held twice that you didn't have commercial speech here and assessed fees only for some of the legal work done thereafter, correct? That is a correct statement, Your Honor, but the nuance is a little different. But there's no reason for it to look back, right? It's only going forward from that point that's relevant. No, Your Honor. What the District Court thought was that we should have known that the District Court's commercial speech ruling would have been the same at summary judgment. And that's just not true. The one example I would give, Your Honor, is podcast 472, and that's docket entry 177-8. This is something the District Court did not consider, and I would also refer to Your Honor's docket entry 272-26. It's a social media workshop document. In the social media workshop document, Novella's company talks about how podcast 472, which is document 177-8, is secondary promotional use of the second attack. This is quoting from the social media document. This is quoting from the defendant's side. Facebook is our main social media entry point. You can think of it as the top of the funnel where we convert people who know nothing about us into a like. That like puts us on their feed where they might click into one of our posts. Many of our posts are news items on the SGU website. I started a news page called SGU News. We get ad revenue from that traffic as well as some conversions over to podcast listeners. Podcast 472, which is docket entry 177-8, shows exactly this. The second attack in this case is listed as a news item in a commercial window. This court said in the panel opinion that speech in a commercial window can be secondary promotional uses. Judge Ginsburg, the point I was trying to make is that the district court didn't do this analysis with respect to the evidence. The court mistakenly thought that we didn't present any new evidence as the case progressed. I want to be clear about the orders that Your Honor was referring to because it seemed like the district court confused the parties in the fee order. There was a commercial speech ruling as to a non-profit in March of 2015 that defendant Novella does not own. In the fee order, this is docket number 333 page 2, the district court thought that defendant Novella owned that non-profit. The next commercial speech ruling was on the injunction against Dr. Novella. In that ruling, the court said, I'm not going to find commercial speech because there's no economic motivation. Subsequently, the district court allowed us to present evidence to support our claims. The whole point in opposing summary judgment was showing economic motivation, and in fact, we succeeded in doing that. We succeeded in showing the district court there was economic motivation because what the district court then said is, okay, there's some new evidence, but it's not strong enough economic motivation. Judge Ginsburg, your question, I think, implies that somehow we should have known to stop at the injunction.  As far as the first commercial speech ruling as to the society, the district court made it clear that it wasn't applying to Dr. Novella. Three different times, page 9, page 12, page 13, at least as far as the society, at least as far as the society, at least as far as the society. We thought that that was a signal that we had a different argument with respect to Dr. Novella. We lost the injunction, but at that hearing, the court thanked the parties, talked about how complex the issues were, and allowed us to proceed. The procedural history subsequent to the injunction, your honors, Dr. Novella asked for the case to be dismissed twice based on the commercial speech issue. Asked for sanctions. Stop the case based on commercial speech. The court denied it. Stop the case. Sanction these parties. Let me ask you a question. I know you're in the middle of your argument, but something preliminary to the merits. You say in your brief that every single decision made by the district court here is subject to de novo review. I'm not sure that that's an accurate statement. I mean, you're saying that the district court's finding entitlement aside to the number of hours and to the fee on an hourly basis, all those are de novo? We just go back and do everything all over again without any deference on anything whatsoever? Well, as far as the second part of your honors question, I think your honors could deny fees and say that the district court should not have switched from the bad faith standard during the case on one party to the octane fitness standard as to Dr. Novella. That was not fair. I'm not disputing your argument that with regards to some issues, there are at the very least mixed issues of law and fact, or there's an abuse of discretion standard. But you're suggesting that in a fee review, we're doing everything de novo. Everything is plenary and there is no deference on anything. Well, your honor, there were clearly erroneous conclusions of fact in law. I mean, with respect to the injuries, erroneous decisions on facts don't trigger de novo review, even if you're correct about them. What do they normally trigger? Well, it depends. If it's an unreasonable, clearly erroneous conclusion of fact, it is de novo, your honor. No, it's not de novo. You have to, in a normal setting on an issue of fact, you have to normally convince the appellate court that there's clear error. And that's a very different standard than de novo review, which is just misapplication of law, generally speaking. Well, I would ask, your honor, in terms of the clear error on the billing entries, to look at John Heller's expert declaration. That's docket number 304-3. John Heller explained, went through the billing entries and talks about how incomprehensible they are. There was double counting. There's charging the client twice. I'm not suggesting that you're either right or wrong on the merits of your ultimate arguments. What I'm questioning is your assertion in the brief that everything gets de novo review. I'm just not sure that that's accurate. I base that on what I believe to be clearly erroneous view of the procedural history and readings of the orders and switching from bad faith on one party to octane fitness on another party in the same exact case. Tell me about the anti-slap fees, which are lesser in scope, but you're appealing them as well. Why was there error in granting fees with regards to, I think, only one of the corporate defendants on that? Correct, your honor. There are several reasons we articulated in the briefing. One of them is the double billing and the over billing makes the billing incomprehensible. Under the anti-slap law in California, that's a basis to deny fees. I would refer your honors to John Heller's declaration, docket number 304-3. There are other reasons why the slap motion, this fees motion should have been denied, which we articulate. I'm running out of time. I can list them, your honor. They're in our brief. If you could, I'll just take my colleague's indulgence for a second. You argue not just that there's error in figuring out the hours and the billable rate and duplication and excessive amounts of hours worked, but you claim that there's legal error in the awarding of fees under the anti-slap statute, do you not? Yes, your honor. This was not a frivolous case. Anti-slap fees are for frivolous cases. Anti-slap fees are appropriate when the motion stops the case. The motion didn't stop the case. The motion had an improper purpose because the motion itself asked for the entire case to be dismissed, including the Lanham Act claims. That's docket number 90, page 20. On the anti-slap fees, it looked like to me that the district court heard all of your objections to those fees and really incorporated all of your objections into her award. I think my reading of it was that she reduced the anti-slap fees in every way that you ask her to. Am I wrong about that? You're partially correct, your honor. The district court took our experts, assuming arguendo, if you're going to give fees, this is the amount I'd give. The district court took John Heller's amount, brought it down from $169,000 down to $36,000 and change. Just took John Heller's— So you're complaining? I mean, she did what you asked her to. Well, we asked for the fees to be outright denied. As John Heller says, this is an unintelligible request. I will agree with your honor. It's not the largest part of the fee award, but we preserved the issue for appeal. The other issue, your honor, is the Erie issue. While the panel found that there wasn't a miscarriage of justice in the application of the anti-slap statute in the underlying proceedings, the panel did not find with respect to fees. And so we would ask that the Erie doctrine prevents an award of fees, notwithstanding what it did to the procedure of the case that fees would be rejected. Is that a suggestion that fee-shifting statutes under state law, tried in diversity in federal court, can never yield an award of attorney's fees? I don't know that I'd go that far, your honor. Well, what's the difference between that general broad proposition and your argument here? Because fees, your honor, were based on an anti-slap procedure that did not take into account the entire evidence. So the anti-slap ruling happened before a large part of the discovery was done and before evidence of actual malice that we believe was evidence of actual malice came into the case. We also believe that it hindered the progress of discovery, because under the California anti-slap provision, you need an immediate hearing and you freeze discovery in place. Our argument was that the rules of procedure for allowing discovery in federal court are more plenary and you get to develop your evidence until the end of the case. So I think it depends on the statute, but here we're saying fees were based on an award that didn't take into account the entirety of the case, which we believe showed actual malice. You've saved your time for rebuttal. We'll hear from you then. Thank you, your honor. Thank you. May it please the court. Good morning. My name is Darren Spielman and I represent the Dr. Novella. And as a matter of just short housekeeping, I want to thank everyone for allowing us to go first and thank the other counsels who approved of that as well. It does not go unnoticed. Your honors, as Judge Jordan had just questioned, it seems clear to us that the only question before the court, the only question, is a hybrid of two issues. One, whether the district court abused its discretion, because we believe there's absolutely an abuse of discretion standard here, in finding that this was an exceptional case under the Lanham Act applying octane fitness. Is that decision to apply octane fitness just a pure question of law? Whether you borrow the standards from patent law and exceptional cases and use that in the Lanham Act scenario after octane fitness? Well, to my understanding, I think the 11th is one of the last circuits that has not affirmatively made a statement about the dual applicability of the Lanham Act under octane fitness. Although the octane fitness case clearly states it and nearly every other circuit that we've seen says, yes, in fact, Lanham Act cases use the same standard because the statute in the patent act and in the Lanham Act are identical. The wording is identical. So the applicability is, yes, it's an abuse of discretion standard. Why? Why is it abuse of discretion to decide the legal standard that applies? The decision to award fees under that standard, it seems to me, might be an abuse of discretion standard. But the ultimate question, the initial question of what standard to apply at all is legal, no? But I believe that it still would be an abuse of discretion on the amount. If you're I know you're asking. I'm talking to you about the decision to choose an applicable legal standard. That has to be a legal question, right? I believe that could be a legal standard, a legal review. But I don't know that there is any question that the district court was incorrect in using octane fitness in determining the fee applicability of octane fitness under the Lanham Act as it relates to Dr. Novella. And so we're faced with a question of not, was it ultimately an abuse of discretion to award him the amount of fees and to apply it? If this case took so much effort on the part of counsel in the court to figure out and a thorough published opinion from this court on the merits appeal, why is the case exceptional from just a general perspective? Well, it's exceptional because from the get-go, any reasonable reading of this would see that this was a clear attempt to quell scientific debate. And as Judge Martin was present in the appeals in the first merits decision, it was clear. And the merits appeal made it abundantly clear that this was no chance of commercial speech. The district court said it multiple times. This court said it in its merits decision. And the question of how much time and effort goes into a case cannot be and should not be what would ultimately have the potential of undoing an exceptional case just because there's extra work to be done or even some complexity. No, I'm suggesting that the issues were difficult. Difficulty doesn't extinguish the possibility that it's still an exceptional case. Why is it exceptional then? It's exceptional because this was a – it was – the appellants were provided multiple, multiple signals from day one by all the motions. But even from the moment that the district court entered its summary judgment order as it relates to society, making it clear that the speech at issue was not commercial speech. I know, but that was not an issue that had been decided by the circuit. So you're suggesting that the moment that a district court signals to a party that it disagrees with its litigation position and the district court at the end of the day turns out to be correct, that can be an exceptional case? Yes. Isn't a party entitled to test as long as it has a good faith basis and the claim is not frivolous to test the validity of its legal proposition all the way through appeal if the issue is open in the circuit? Sure, but under that scenario, then any case that went through a full trial or even went to appeal because the right to appeal is always available. So in that case, we would never see an exceptional case come through. Well, I'm asking you then what is an exceptional case? Tell me in two sentences. An exceptional case is a case which? A case, as Octane Fitness explained, which stands out from the rest. And in this situation, a case where the appellants tried to quell scientific debate and tried on multiple occasions to upend through arguably a defamation case but instead tried to use the Lanham Act, which this court clearly rejected. Then on two attempts to appeal, one through Mandamus and one through Assert, the Supreme Court refused to hear. All of those are indicators to us that this was an exceptional case. It was again and again one that shows every aspect of being exceptional. There was no indication anywhere in the record that there is a supporting factor law to indicate that the Lanham Act was going to be able to uphold an attempt to silence scientific debate. That's what makes this exceptional among the other things listed in the briefing. But the number of times with which, including the summary judgment of the co-defendant and then the preliminary injunction were so twice early in the case, the judge signaled to appellants about what they needed to know. But importantly… If they had prevailed against you, would it be an exceptional case awarding fees against you? No, I don't believe so. Why not? Because their position… No, they had won. They won against you. I'm flipping the stakes. So if they beat you in this case, exceptional case for the same reasons, and the district court had told you from the beginning, listen, I'm not going to enter judgment against you right now on the pleadings or this, but you're on a difficult, slippery slope and I see you losing at the end. And at every stage, the district court tells you you're getting closer to losing, you're getting closer to losing, but you continue and you lose and you appeal and the court affirms, this court affirms. Is it an exceptional case against a losing defendant in a Lanham Act case? I certainly would have to look at the specifics of how a… You claim that this was not commercial in any way, shape, or form. Lanham Act didn't apply. Correct. District court disagrees, this court disagrees. Do you get hit with fees for an exceptional case? If there were decisions throughout that had signaled it in the same way that the decisions continued again and again, then yes, I believe that's a possibility. So you don't get to test the validity of what other courts have said in a circuit where the question is open? Well, I think what ultimately answers your question is that the judge actually adhered to her own restraint in the case because she only applied. She only applied the fees to begin after she signaled. But a district judge, Judge Martin and I have been district judges. Yes, I know. There were times when we were told that we were wrong. Yes, I know. I haven't even been wrong, at least speaking for myself. Right. Absolutely. We make mistakes. We get reversed. We're told that we're wrong. Once a district judge tells you, I am really sure of my convictions and I think you're going to lose, then that triggers the possibility of an exceptional case under the Lanham Act? I think that is one of the ways to trigger it, yes, to give a party an understanding that their position is not based in sound fact or in law, yes. The Supreme Court in Octane Fitness gave it its broad reading on purpose, we believe. And so I think that coming back to what you said earlier, just because someone has the right and does appeal and allows a panel like yours to take a look at whether or not this was proper does not magically undo in fact that it was exceptional. So, yes, we don't see that that changes the analysis in any way. They certainly have the right to make such a request. You first reeled off a litany of reasons for thinking it was an exceptional case and then we had this colloquy on the preliminary holdings with regard to commercial speech. What were the factors that the district judge mentioned in deciding it was an exceptional case? I'd have to look back at the briefing. I apologize. I don't have that directly ready, but what I would say is that the court did walk through its analysis. And what I know that the appellant seems to believe that there was a requirement to go through every single aspect of the Lanham Act in order to make such finding. But as this court in the merits appeal made it abundantly clear, that is not needed. In fact, this court specifically said in its merits decision, quote, because the articles are not commercial speech, they cannot be subject to Lanham Act liability as commercial advertising or promotion. Accordingly, we need not reach the other elements of a prima facie Lanham Act false advertising action. This court in the merits decision had the same apparent vision and made the same conclusion that the district court made. That one need not go through the entire thing because otherwise what you would end up with is an advisory opinion. We don't want that. We don't need that. So back to your question of, well, where's the threshold? The threshold is even this court in the merits appeal was not prepared to walk down the entire path because it was clear to this court. If the district court had not been so adamant, I mean getting back to Judge Ginsburg's question, the only reason the district court gave for awarding fees as an exceptional case was the procedural history of the case. And then it had told the parties twice what its views were on the commercial speech aspect of the case. And the plaintiffs didn't stop. And we don't believe that that was an abuse of this court's discretion. We think that was completely reasonable and sound for the court to be able to make that choice. The court, the district court was sufficiently aware of all of the facts and the procedural history that had gone on and on and on to the point where, although I'm arguing on behalf of Dr. Novella today. Early in the case, I was counsel for a previously dismissed co-defendant, SGU. The judge knew all of the parties that were there and all of the dismissals that occurred again and again and again. So back to your early question, yes, I don't believe the district court needed more. If there was a need for more, obviously there's an appeal so we can review what more could have been needed. But I don't see that there was an abuse of discretion. If the district court had not told the parties its views and just simply granted summary judgment in your client's favor, would it be an exceptional case? At that stage in the case, yes, it still would have been. What do you mean that stage? You get to retroactively award fees even though the district court hasn't telegraphed its views of the merits. Well, I don't think the court is required to telegraph its views. I know. That's my question to you. So the district court says nothing to the parties. They engage in discovery. The court doesn't see them until a summary judgment hearing and enters summary judgment in your client's favor. I believe it's – And at that point tells the parties what its view of the law is. Sure, I still believe it's possible, and the reason is because one can look at other – one could look at other aspects. So in that situation, if there was no telegraphing by the court, and if there was just a review of the frivolous nature, for instance, of the case, to try to crowbar in a free speech case through a Lanham Act claim, the other aspect – Mr. Spielman, I think you're missing some of the things the district court said that you ought to be thinking about. This is at 333, page 15. Furthermore, after the court had twice ruled against plaintiffs on the commercial speech issue, plaintiffs repeatedly sought to multiply the proceedings by adding new parties and claims. Yes. And that seemed to me that was as much a matter – much a part of the reason as – maybe a more greater part of the reason, since that looks like an accurate description of the case. The – I have a quote from the court from the same document. The court twice ruled against plaintiffs on the commercial speech issue, and more than 11 months after the litigation began, plaintiffs repeatedly sought to multiply the proceedings by adding new parties and claims. Back to trying to add back my prior client, SGU, into the case after it was dismissed. So at the end of all this, and back to your question, Judge Jordan, is even in this situation, so even if there was not a specific telegraph, the continued multiplying of the litigation, which the other side would have you believe that the complexity of it makes it not exceptional. I would argue the reverse. The complexity of it added to the exceptional nature, that it was doubling down again and again, that the court said so, that it was a constant and continual attempt to find a way to exert its power to silence scientific debate. And that's worrisome. I know I'm out of time, so I'll finish quickly unless you have another question. This is a question of Dr. Novella presented a fervent defense. This court ultimately upheld the lower court's decision, and the Supreme Court denied any review. And now Dr. Novella is going to be potentially penalized after being awarded fees, and again after being awarded fees on the next fee request, which was recently entered in December by the lower court on the appeal. And what appellants would have you do is make a person who's engaged in scientific debate have to burden and bear the cost of such a fight, because of a claim that it wasn't exceptional in some how. We find that to be improper. Thank you. Thank you very much. I take issue with a couple of the statements. I'll start with fervent defense. Fervent defense, in my opinion, is a 12B6 motion right away. They never filed a 12B6 motion. You can't file a 12B6 motion all the time. Sometimes a plaintiff's lawyer properly and skillfully drafts a complaint so that it's immune from a 12B6 motion, and you're going to have to play your cards at summary judgment after discovery. You can't always file a 12B6 motion. Well, that's their argument. From the beginning, this was a case that should have been dismissed on commercial speech. They didn't answer for nearly a year after. But don't you need factual development and support to figure out whether or not this was commercial speech or not? Exactly, Your Honor, and that is the problem. And you couldn't have filed a 12B6 motion? No, Your Honor. Well, factual support shows that this was commercial speech. I would point Your Honors, I would start with Your Honors. Are you going to relitigate that? No, I'm not going to relitigate it. But if you look at footnotes 13 and 14 of the panel's opinion, Your Honor, there was a tremendous amount of evidence this court did not consider. The district court didn't consider it. This is why I was talking about Podcast 472. How can fees be assessed without looking at the evidence in the case? The evidence wasn't considered. How can we assess fees without looking at the evidence? Going back to one of the points that Judge Ginsburg made with your colleague, the district court, after laying out the procedural history and indicating that your client had decided to press forward, despite the district court's view of where the law was going, also sought to multiply the proceedings by adding new parties and new claims, and after this was unsuccessful, then your client moved for summary judgment and then attempted to salvage its case by moving for sanctions and accusing Dr. Novella of perjury, an accusation that the court found no evidence to support. Why is that an improper factor for the district court to have considered? Well, as far as the last part, Your Honor, when we found material inconsistencies between Dr. Novella's sworn statement and deposition and emails, we had evidence to support it. The district court never found no evidence to support. The district court looked at a clear and convincing standard, but that is incorrect. That is not what the district court held. The district court did not say no evidence to support. And in fact, the panel, in looking at this, found inconsistencies. So that is just fundamentally wrong. We had evidence. We had evidence that his declaration was materially inconsistent, that his deposition testimony was materially inconsistent with the evidence. So there was evidence. There was evidence. As far as, I think I might have heard you wrong, Your Honor, saying that we moved for summary judgment. The appellants never moved for summary judgment. However... No, Novella moved for summary judgment on the commercial speech issue. And that's an important point, Your Honor, because I believe that the district court was encouraging us to proceed, not telling us not to proceed. And this is one of the examples. Dr. Novella moved for summary judgment twice. He moved for summary judgment the first time. The court set a hearing. Then he withdraws the motion, and the court allows Dr. Novella to withdraw the motion so that we could do discovery in the case. It was a summary judgment motion based on commercial speech. The district court took down the hearing, allowed him to withdraw it, so we could do discovery. The court allowed us to do discovery. And as far as this panel's opinion, I believe technically the panel said that Dr. Novella was entitled to summary judgment. However, our whole theory was a secondary promotional use theory about having speech in a commercial window. The district court never accepted that theory. This court accepted the theory. The panel in footnotes 13 and 14 didn't look at our evidence, but I would say that our legal theory was upheld. So I think from a legal standpoint, we were upheld. As far as the way the district court looked at the commercial speech issued each time, it was different each time. For the summary judgment opinion, Your Honor, the district court looked at how much money Dr. Novella was making from his for-profit entity, so took into account his for-profit dealings and said, ah, $200,000 a year, he's got a lot of expenses, it's not a strong enough economic motivation. The district court had never looked at that that way. The district court in the preliminary injunction hearing said that we didn't present any evidence of economic motivation, summary judgment. We got the district court to see the economic motivation, but it wasn't strong enough. The district court also said we didn't show any income, whereas in the preliminary injunction hearing, the court orally and on paper found income. I'm out of time, Your Honor. Do Your Honors have any further questions? No. Thank you, Your Honor. Thank you.  Thank you, Your Honor.